UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Latonya Jackson, individually and on behalf of all others similarly situated, | 1:21-cv-05219 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kraft Heinz Foods Company, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Kraft Heinz Foods Company ("defendant") manufactures, labels, markets, and sells pizza bagels, purporting to contain mozzarella, cheddar and Monterey Jack cheese and tomato sauce under its Ore Ida brand ("Product").



2. Relevant front label representations include "Three Cheese," "Mini Bagels with Mozzarella, Cheddar, Monterey Jack Cheeses and Tomato Sauce," "Made With Real Cheese," the "Real" dairy seal, "No High Fructose Corn Syrup," and "No Artificial Flavors."

3. Consumers are misled by the representations because the front label omits that (1) starch, nonfat milk, and whey are added to the "real" mozzarella cheese, and (2) tomatoes are replaced with non-tomato thickeners including cornstarch.

4. Federal and identical state regulations prohibit false and deceptive practices with respect to labeling food and beverages. *See* Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 343(a)(1) (a food is misbranded if "its labeling is false or misleading in any particular."); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("[a] federal [food labeling] regulation automatically adopted…takes effect in this State on the date it becomes effective as a Federal regulation.").

5. The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing products like Defendant's Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

### I. THE FRONT LABEL OMITS THAT THE "MOZZARELLA CHEESE" INCLUDES STARCH, NONFAT MILK, AND WHEY

6. While consumers are promised "Three Cheese[s]," the ingredient list shows they receive a "Topping," consisting of a "Cheese Blend," cheddar cheese and Monterey Jack cheese.

2

INGREDIENTS: BAGEL HALVES (ENRICHED FLOUR [WHEAT FLOUR, ENZYME, ASCORBIC ACID, NIACIN, REDUCED IRON, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID] , WATER, SALT, INVERT CANE SYRUP, YEAST, SOYBEAN OIL) **TOPPING** (CHEESE BLEND [(CHEESE [MOZZARELLA CHEESE (CULTURED MILK, SALT, ENZYMES), MODIFIED FOOD STARCH, NONFAT MILK, WHEY PROTEIN CONCENTRATE]), CHEDDAR CHEESE (CULTURED MILK, SALT, ENZYMES, ANNATTO COLOR), MONTEREY JACK CHEESE (CULTURED MILK, SALT, ENZYMES)]) **SAUCE** (WATER, TOMATO PASTE, INVERT CANE SYRUP, MODIFIED CORN STARCH, SALT, METHYLCELLULOSE, CITRIC ACID, POTASSIUM CHLORIDE, AMMONIUM CHLORIDE, SPICE, YEAST EXTRACT, NATURAL FLAVOR, CALCIUM LACTATE), INVERT CANE SYRUP, WATER.

7. The representations that the Product contains "Real Cheese," and "Mozzarella Cheese" are misleading because the front label omits that "Modified Food Starch, Nonfat Milk, [and] Whey Protein Concentrate" are added to the mozzarella cheese to form a "cheese blend."

8. There are four varieties of mozzarella cheese, which differ in fat and moisture content: (1) mozzarella, (2) low-moisture mozzarella, (3) part-skim Mozzarella, and (4) low-moisture part-skim mozzarella. 21 C.F.R. § 133.155; 21 C.F.R. § 133.156; 21 C.F.R. § 133.157; 21 C.F.R. § 133.158.

9. Mozzarella cheese is made chiefly from milkfat with a small amount of permitted optional ingredients. 21 C.F.R. § 133.155(a).

10. The optional ingredients include additional milk or cream, clotting enzymes, vinegar, coloring, and salt. 21 C.F.R. § 133.155(b)(1)-(3).

11. The reason optional ingredients are restricted is to prevent addition of lower quality ingredients in place of high-quality dairy ingredients.

3

12. Defendant promises "mozzarella cheese," with no less than 45 percent milkfat. 21 C.F.R. § 133.155(c).

13. Though the Product contains mozzarella cheese, the front label omits that this is blended with starch, nonfat milk, and whey.

14. Through adding these ingredients, the most valuable component of milk – milkfat – is reduced and substituted with cheaper, filler ingredients. 21 U.S.C. § 342(b)(1) (deeming a food adulterated "If any valuable constituent has been in whole or in part omitted or abstracted therefrom").

15. Starch is a lower quality ingredient compared to dairy, and especially to milkfat.

16. Starch also holds up to ten times its own weight in water.

17. By adding one unit (by weight) of starch to a batch of food means that up to ten units (by weight) of extra water may also be added to the mix, and the resulting product will maintain its consistency.

18. Therefore, by adding starch, Defendant uses less cheese and milkfat.

19. The typical consumer will not be aware of the functionality played by starch in a complex food matrix, and know it is used to replace cheese.

20. The addition of nonfat milk lowers the overfall fat content of the "mozzarella cheese" or "cheese blend."

21. Whey is the liquid remaining after milk has been curdled and strained, and a byproduct of the manufacture of cheese or casein.

22. Whey is used to replace milkfat and is lower in quality compared to the whole milk expected in mozzarella cheese.

23. Reasonable consumers do not expect a cheese blend with starch, whey, and nonfat

milk where the front label promises "Mozzarella Cheese" and "REAL" cheese.

24. Consumers expect mozzarella cheese to mean cheese from milkfat, not a "cheese blend" containing some mozzarella, added starch, nonfat milk, and whey.

25. Consumers value mozzarella cheese for (1) its soft, moist texture, (2) its milky, yet tangy taste and (3) its high protein and relatively low calories and sodium compared to other cheeses.

## II. "REAL" DAIRY SEAL IS MISLEADING

26. Consumers value independent, third-party seals as a shorthand way to establish whether a product has been vetted by an accredited, independent entity.

27. Obtaining approval from an independent third-party allows companies to obtain a marketplace advantage, to sell more products at higher prices.

28. Recognizing the value of independent certification, the Federal Trade Commission ("FTC") has warned companies against making misleading representations regarding independent certification. *See* 16 C.F.R. § 260.1.

29. As stated in the FTC guidelines against deceptive marketing regarding "Certifications and Seals of Approval":

> It is deceptive to misrepresent, directly or by implication, that a product, package, or service has been endorsed or certified by an independent third party.

> 16 C.F.R. § 260.6(a) (emphasis added).

30. Defendant's front label (left) makes prominent use of the "REAL" dairy seal (right), owned by the National Milk Producers Federation ("NMPF"), which authorizes its use to third parties.

5

| Defendant's Front Label | "REAL" Dairy Seal |
|---|---|
|  |  |

31. The REAL Seal was introduced in 1976 by the dairy industry "to combat the use of imitation cheeses on pizzas."[1]

32. According to the website, realseal.com, "When you see the REAL® logo on a product in a store or on a menu in a restaurant, you can trust it's the real thing, and not a pale imitation."

33. Defendant knows consumers want real mozzarella cheese which is why it emphasizes "Mozzarella Cheese," protein content, the "REAL" seal and "MADE WITH REAL CHEESE."

34. The website for the REAL Seal details its "Vetting Process:"[2]

---

[1] NMPF, The Real Seal Story.
[2] NMPF, Who Can Use the Real Seal?

So how do we ensure that products fulfill the strict requirements detailed above? We require every brand to submit copies of packaging and a detailed ingredient label for each product they wish to certify. This allows us to properly vet the products to ensure they meet the REAL® Seal standards.



35. The traditional "REAL" seal does not contain any qualifying text, and is what defendant uses on its front label.

36. According to the NMPF, the original "REAL" Seal can be used where a food contains dairy ingredients that meet federal standards of identity.

37. Where a food or dairy ingredient does not meet a standard of identity, it can use a modified version of the REAL seal, subject to evaluation by the NMPF.

38. The four modified seals contain the word "REAL" accompanied by the qualifying statements: "Made With Milk," "American Made Butter," "American Made Cheese" and "Made With Dairy."

7

```
```


39. Defendant's Product does not qualify for the traditional "REAL" seal because the "cheese blend" contains starch, an extender and filler.[3]

40. Though NMPF guidelines might have allowed defendant to use one of the four modified REAL seals, defendant misappropriated the original "REAL" seal and added the statement, "MADE WITH REAL CHEESE."



41. The use of the standard "REAL" seal with the statement "MADE WITH REAL CHEESE" is unauthorized by the NMPF because the Product does not contain "real cheese."

42. No reasonable consumer expects mozzarella cheese to have starch, nonfat milk, and whey.

43. Defendant knew the Product did not meet the "rigorous and exacting certification process" of the NMPF to use the traditional "REAL" seal.

---

[3] NMPF, Who Can Use The REAL® Seal?.

44. Though the Product may have been authorized to use a modified "REAL" seal, Defendant chose to misuse the "REAL" seal, adding its own misleading statement – "MADE WITH REAL CHEESE."

45. The use of the "REAL" seal and accompanying statements misleads consumers as to the quality of the Product.

### III. DEFENDANT'S "CHEESE BLEND" IS LESS NUTRITIOUS THAN MOZZARELLA CHEESE

46. The addition of starch, nonfat milk, and whey causes the "[mozzarella] cheese blend" to be nutritionally inferior to mozzarella cheese.

47. Consumers are misled because the front label fails to disclose – as required by law – that the purported mozzarella cheese blend is an imitation because "it [the cheese blend] is a substitute for and resembles another food [mozzarella cheese] but is nutritionally inferior to that food." 21 C.F.R. § 101.3(e)(1).

48. The addition of starch, nonfat milk, and whey permit a reduction in milkfat content, resulting in at least two percent less of the daily recommended value ("DRV") of protein. 21 C.F.R. § 101.3(e)(4)(ii) ("Nutritional inferiority").

49. Consumers are misled because the front label fails to identify the "mozzarella cheese" as an "imitation" on the front label.

50. The ingredient list fails to disclose that the Product does not contain mozzarella cheese.

51. First, the ingredient list uses the misleading term – "cheese blend" – to describe a lower quality, or imitation mozzarella cheese.

52. Second, consumers reading the ingredient list will not know the exact nutritional values of starch, nonfat milk, and whey, compared to real milk.

53. Only after purchasing and consuming the Product will consumers also realize the Product does not taste like mozzarella cheese, due to the flat "cardboard-like" taste and rubbery mouthfeel associated with the extender and filler ingredients.

54. Defendant could avoid having to identify the mozzarella cheese as an imitation if the front label disclosed the addition of the added filler ingredients.

## IV. THE REPRESENTATION OF "TOMATO SAUCE" IS MISLEADING

55. Tomato sauce is understood by consumers as a tomato product that is not as thick as tomato puree but thicker than tomato juice, with flavor enhanced through herbs and spices.[4]

56. The USDA defines tomato sauce in a way consistent with what consumers expect from this food, as a combination of tomato ingredients "to which is added salt and spices [.] [,] [o]ne or more nutritive sweetening ingredients, a vinegar or vinegars, onion, garlic, or other vegetable flavoring ingredients."[5]

57. The thickness of a tomato sauce is a marker of quality, because a thicker sauce has deeper and richer flavor and texture.

58. The front label representation of "Tomato Sauce" is false, deceptive, and misleading because it contains non-tomato ingredients designed to give the impression it contains more tomatoes than it does.

59. The fourth and sixth most predominant ingredients are "Modified Corn Starch" and "Methylcellulose."

---

[4] Tomato Sauce.
[5] USDA, Tomato Sauce Grades and Standards.

> **SAUCE** (WATER, TOMATO PASTE, INVERT CANE SYRUP, MODIFIED CORN STARCH, SALT, METHYLCELLULOSE, CITRIC ACID, POTASSIUM CHLORIDE, AMMONIUM CHLORIDE, SPICE, YEAST EXTRACT, NATURAL FLAVOR, CALCIUM LACTATE)

60. Cornstarch and methylcellulose are thickening agents, generally considered adulterants for tomato sauce because the valuable tomato ingredients have been "in part omitted or abstracted therefrom." 21 U.S.C. § 342(b)(1).

61. The addition of cornstarch and methylcellulose rechanges the substance, texture, and nutritional composition of the ingredient identified only as "sauce" on the back label.

62. By using cornstarch and methylcellulose, consumers get thirty-five percent less tomatoes.

63. Cornstarch and methylcellulose are cheaper than tomatoes because they are produced industrially in a chemical plant instead of grown on a farm.

64. Consumers value tomato sauce that gets its thickness from tomatoes instead of cornstarch and methylcellulose, because of their taste, and nutrient density.

65. Tomatoes are rich in lycopene, an antioxidant that contributes to heart health and reduction in cancer risk.

## V. CONCLUSION

66. Whether a product contains the amount and/or proportion of cheese and tomato ingredients expected by consumers is basic information relied on when making decisions at the store.

67. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

68. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

69. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

70. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

71. The Product is sold for a price premium compared to other similar products, no less than approximately $10.29 for 40 halves (31.1 oz), a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

72. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

73. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

74. Plaintiff Latonya Jackson is a citizen of Illinois.

75. Defendant Kraft Heinz Foods Company is a Pennsylvania limited liability company with a principal place of business in Pittsburgh, Allegheny County, Pennsylvania and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

76. Plaintiff and defendant are citizens of different states.

77. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

78. Venue is in the Eastern Division because plaintiff resides in Cook County, which is

where the events giving rise to the present claims occurred.

## Parties

79. Plaintiff Latonya Jackson is a citizen of Homewood, Cook County, Illinois.

80. Defendant Kraft Heinz Foods Company, is a Pennsylvania limited liability company with a principal place of business in Pittsburgh, Pennsylvania, Allegheny County.

81. Defendant's predecessor, the Kraft Corporation, was started in 1903 through the sale of cheese door-to-door in Chicago.

82. Within twenty years, Kraft had become the largest cheese manufacturer in the world.

83. Because Kraft was a producer of cheese, it has generally been hostile to the producers of dairy farmers, who sought a fair price for their milk products.

84. Kraft has continually sought to reduce its reliance on milk and dairy ingredients, to the detriment of the dairy industry.

85. The Three Cheese Bagel Bites are sold in various sizes, consisting of 9, 18, 24 and 40 bagel halves.

86. Plaintiff bought the Product on one or more occasions within the statute of limitations for each cause of action alleged, at stores including Target, 7300 W 191st St, Tinley Park, IL 60487, in September 2021, among other times.

87. Plaintiff bought the Product because she expected it contained mozzarella cheese, without added fillers, and tomato sauce thickened by tomatoes.

88. Plaintiff expected that if the Product contained ingredients which changed the nature of mozzarella cheese and tomato sauce, this would be disclosed on the front label.

89. Plaintiff knew that Kraft was a brand with an established reputation for quality and expected it would live up to its word on the Product's composition.

90. Plaintiff bought the Product at or exceeding the above-referenced price.

91. Plaintiff relied on the representations identified here – "Three Cheese," "Made With Real Cheese," "Mozzarella Cheese," and "Tomato Sauce."

92. Plaintiff would not have purchased the Product if she knew the representations were false and misleading by omission.

93. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the statements and claims made by Defendant.

94. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

95. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

96. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[6]

97. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

---

[6] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

14

98. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

99. Plaintiff is an adequate representative because her interests do not conflict with other members.

100. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

101. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

102. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

103. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

104. Plaintiff incorporates by reference all preceding paragraphs.

105. Plaintiff and class members desired to purchase a product that contained mozzarella cheese, without added fillers, and tomato sauce thickened by tomatoes.

106. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

107. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

108. Plaintiff relied on the representations and omissions.

109. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts

### (On Behalf of the Consumer Fraud Multi-State Class)

110. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

111. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

112. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State Class, have sustained damages in an amount to be proven at trial.

113. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

114. The Product was manufactured, identified, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained mozzarella cheese, without added fillers, and tomato sauce thickened by tomatoes.

115. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

116. This duty is based on Defendant's outsized role in the market for this type of product because Kraft and the OreIda brand are among the most trusted food companies in America.

117. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

118. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

119. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

120. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

121. Defendant had a duty to truthfully represent the Product, which it breached.

122. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodians and owners of the OreIda brand, known for its high-quality frozen foods.

123. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a leader in the field of frozen, "heat-and-eat" foods.

124. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

125. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

126. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained mozzarella cheese, without added fillers, and tomato sauce thickened by tomatoes.

127. Defendant possesses specialized knowledge regarding the relative amounts of

mozzarella cheese and tomato sauce content of the Product, and that omissions from the front label of the term "imitation," or disclosure of added milkfat replacers, and replacement of tomatoes with cornstarch, would mislead consumers.

128. Moreover, the records Defendant is required to maintain provide it with actual and/or constructive knowledge of the falsity of the representations.

129. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

Unjust Enrichment

130. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

experts; and

6. Other and further relief as the Court deems just and proper.

Dated: October 2, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com